

**COURT EXHIBIT**
**I**
11-cr-00363

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 11-cr-00363-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. AXIS LABS, LLC.,

      Defendant.

---

## RULE 11(c)(1)(B) PLEA AGREEMENT AND STATEMENT
## OF FACTS RELEVANT TO SENTENCING

---

The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado, Jaime A. Pena, Assistant United States Attorney, and the defendant, Axis Labs, LLC., by its duly authorized representative Christopher Gatchis and by counsel, Rick Collins, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1 and Fed. R. Crim. P. 11(c)(1)(B).

### I. PLEA AGREEMENT

Defendant Axis Labs, LLC., (sometimes referred to herein as Axis Labs) agrees to plead guilty to Count One of the Information charging violations of Title 18 U.S.C. § 1341 (Mail Fraud) and Title 18 U.S.C. § 2 (Aiding and Abetting).

The Defendant Axis Labs and its representatives agree to execute the necessary documents and pleadings necessary to effect this plea agreement, including but not limited to the execution of minutes authorizing this plea agreement, the arraignment of the defendant business entity, and the authorization for a representative to represent Axis Labs at sentencing.

## (1) General Provisions.

Should the defendant meet its obligations as set forth in this agreement, including providing truthful testimony whenever requested by the Government, the Government will agree not to seek an upward departure pursuant to the advisory Sentencing Guidelines, and agrees that a stipulated **fine of $50,000.00**, payable at the time of sentencing, is a reasonable and just sentence within the law and the factors outlined in 18 USC 3553(a).

Axis Labs agrees to cooperate with the Government in its investigation.

If the Court accepts this plea agreement and imposes sentence in accordance with this agreement, the government agrees that it will file no other federal criminal charges based on matters currently known to the government and described in the statement of facts below.

## (2) Forfeiture Agreement:

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property **(a sum of $107,000.00)**, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the

2

government.  Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described ($107,000.00) and to take whatever steps are necessary to pass clear title to the United States.  These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. This Court shall retain jurisdiction to settle any disputes arising from application of this clause.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

**(3) Appellate Waiver**.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in

connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the offense level is greater than 12 and imposes a sentence based upon that offense level determination. The defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742 or any ground whatever. The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

## II. STATUTORY PENALTIES

The maximum statutory penalty for a violation of Title 18 U.S.C. § 1341 (Count 1 of the Information) is a term of imprisonment of not more than 20 years, and not more than $500,000 fine, or both, and up to 3 years supervised release, and $100 special assessment fee. Because the defendant is a business organization/entity, the maximum penalty for a violation is a fine of up to $500,000.00 pursuant to 18 U.S.C. §§ 3571(c)(4) and 3571(e).

4

## III. <u>ELEMENTS OF THE OFFENSE</u>

The elements of the offense, a violation of Title 18 United States Code, Section 1341, are as follows:

*First*: the defendant knowingly devised or intended to devise a scheme to defraud and obtain money or property by means of false or fraudulent pretenses, representations or promises, that is a scheme involving the sale and distribution of a product known as Monster Caps representing it was a "dietary supplement", when in truth it was a "new drug" that required approval from the FDA prior to its dispensing;

*Second*: the defendant acted with specific intent to defraud or obtain money or property by false pretenses, representations or promises;

*Third*: the defendant mailed something or caused another person to mail something through the United States Postal Service, or a private or commercial interstate carrier for the purpose of carrying out the scheme.

*Fourth*: the scheme employed false or fraudulent pretenses or representations that were material.

## IV. <u>STIPULATION OF FACTUAL BASIS AND FACTS</u><br><u>RELEVANT TO SENTENCING</u>

The parties agree that there is no dispute as to the material elements that establish a factual basis for the offense for conviction. Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts that the parties believe are relevant, pursuant to U.S.S.G. § 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies those facts known

to be in dispute at the time of the plea. U.S.S.G. § 6B1.4(b).

The statement of facts herein does not preclude either party from presenting or arguing, for sentencing purposes, additional facts or factors not included herein that are relevant to the guideline computation, U.S.S.G. § 1B1.3, or to sentencing in general. U.S.S.G. § 1B1.4. "[I]n determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4, comment.

The parties agree that the date on which conduct relevant to the offense (U.S.S.G. § 1B1.3) began is on or about May 2008 and continued until in or about March 2009. The parties agree that the Government's evidence would be as follows:

Axis Labs was a limited liability company whose principal place of business was 12835 E. Arapahoe Rd, Tower One, Suite 450 Centennial, Colorado.

Beginning on or about May 28, 2008, Axis Labs, through its employees, agents officers and representatives, caused approximately 5,000 units of Monster Caps to be manufactured by ATF Fitness Products located at 140 Pennsylvania Avenue, Oakmont, Pennsylvania. Each unit represents one bottle of Monster Caps which contained 60 capsules. The finished product was shipped in interstate commerce from Pennsylvania to an Axis Labs warehouse located at 11701 E. 53rd Ave, Denver, Colorado as follows:

| Date | Purchase Order Number | Quantity | Total |
|------|----------------------|----------|-------|
| 5/28/2008 | 1158 | 2,000 | $20,000 |
| 6/30/2008 | 1166 | 1,000 | $10,000 |
| 7/10/2008 | 1167 | 2,000 | $20,000 |

Axis Labs provided ATF Fitness Products the labels for Monster Caps purporting the product to be a "dietary supplement" knowing that Monster Caps contained anabolic steroids, or similar synthetic compounds, which rendered the product a "drug" and not a "dietary supplement." The labels were manufactured by Digital Dogma, 13003 Los Nietos Road, Santa Fe, New Mexico and shipped on behalf of Axis Labs to ATF Fitness as follows:

| Invoice | Date | Quantity | Total |
|---|---|---|---|
| 11330 | 6/9/2008 | 2,025 | $461.70 |
| 11627 | 7/16/2008 | 3,050 | $723.00 |

From June 19, 2008 until March 2, 2009, Axis Labs sold approximately 4,994 units of Monster Caps through approximately 64 separate orders to customers throughout the United States. Gross revenue for domestic and international sales of Monster Caps was approximately $107,959.74. Axis Labs caused these units to be shipped in interstate and foreign commerce through the use of a fulfillment company known as At Last Fulfillment, located at 22100 E 26th Ave., Aurora, Colorado. Common Carrier shipments were generally made through an account established with UPS, Inc.

Axis Labs knowingly devised a scheme to defraud the FDA and consumers by misrepresenting the contents of Monster Caps was merely a dietary supplement when in fact it was a drug that was not approved by the Food and Drug Administration, in violation of 21 U.S.C. §§ 331(d), 333(a)(2) and 355. Monster Caps contained the following synthetic steroid:

17a-methyldrostanolone [also known as methasterone, superdrol]. 17a-methyldrostanolone is a specially designed synthetic steroid derived from a simple chemical modification of a known anabolic steroid. This compound did not qualify as dietary supplements, as defined at 21 USC 321(ff), because Axis Labs intended these products to affect the structure

and function of the human body. They were "drugs" as defined at 21 USC 321(g)(1)(c), and "new drugs" as defined at 21 USC 321(p), and lacked the New Drug Application required by 21 USC 355.

The Food, Drug and Cosmetic Act defines the term "dietary supplement" as a product intended to supplement the diet that bears or contains one or more of the following dietary ingredients: (a) a vitamin; (b) a mineral; ( c) an herb or other botanical; (d) an amino acid; ( e) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (f) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (a), (b), (c), (d) or (e). Drugs cannot be dietary supplements.

On March 2, 2009, Axis labs shipped a package of Monster Caps from Colorado to Idaho via UPS. The Monster Caps contained the material misrepresentation that it was a dietary supplement when in truth it was a new drug requiring FDA approval and a medical prescription prior to dispensing. Had the customer known this product was not FDA approved as a new drug, or that it was not a dietary supplement, the customer would not have bought the substance.

## V. SENTENCING COMPUTATION

The parties stipulate that sentencing in this case will be determined by application of the 2010 version of the advisory United States Sentencing Guidelines (USSG), issued pursuant to 28 U.S.C. § 994(a).

The parties understand that the Court may impose any sentence, subject to the mandatory minimum sentence and up to the statutory maximum sentence, regardless of any Guideline range computed, and that the Court is not bound by any position of the parties. USSG § 6B1.4(d). The parties understand that the Sentencing Guidelines are advisory. The Court is free, pursuant to

USSG §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. USSG § 6B1.4 comment.; USSG § 1B1.4. To the extent the parties disagree about the sentencing factors, the computations below identify the factors that are not in dispute. USSG § 6B1.4(b).

A.    The base guideline provision applicable to this offense is USSG § 2B1.1. The base offense level is 6; however, because the stipulated loss is less than $120,000.00, and over $70,000.00, there is an additional 8 levels pursuant to USSG § 2B1.1(b)(1)(E). Therefore, the base offense level is 14.

B.    There are no role adjustments pursuant to USSG §3B1.1. The offense level remains 14.

C.    Pursuant to USSG § 3E1.1(a), defendant has clearly demonstrated acceptance of responsibility. A two-level downward adjustment results in an offense level of 12.

D.    The parties understand that the defendant's criminal history computation is tentative. The criminal history category (CHC) is determined by the Court. At this stage, it appears that the defendant has a limited criminal history, resulting in a CHC of I.

E.    The Guideline range resulting from the estimated offense level of 12, and the tentative CHC of I, is 10 to 16 months. However, in order to be as accurate as possible, with the CHC undetermined at this time, the estimated offense level could conceivably result in a range from 10 months (bottom of Category I with a base offense level of 12) to 37 months (top of Category VI with a base offense level of 12). Because the defendant is a corporation, imprisonment is unavailable.

9

F.      Pursuant to USSG § 5E1.2(c)(3) and Title 18, United States Code, section 3571, assuming an offense level of 12, the fine range for this offense is $3000 to $500,000.00 plus applicable interest and penalties.

G.      Pursuant to 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of up to three years.

H.      Pursuant to 18 U.S.C. § 3561 , the Court may sentence this defendant to a term of up to 5 years probation, and may impose conditions it deems appropriate after applying the factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3561.

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct directly attributable to this defendant is disclosed, the sentencing guidelines and 18 USC 3553 permit the court to take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 10/7/2011

_____
Christopher Gatchig, Authorized Representative of
Axis Labs, LLC.

Date: 10/13/11

_____
Rick Collins, Attorney for Defendant

Date: 10/13/11

_____
Jaime A. Pena, Assistant U.S. Attorney

10